OPINION
{¶ 1} Defendant-appellant Danny K. Davis appeals his conviction and sentence entered by the Licking County Court of Common Pleas, on one count of gross sexual imposition, in violation of R.C. 2907.05 (A)(4), following a jury trial. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS {¶ 2} On July 22, 2004, the Licking County Grand Jury indicted appellant on one count of rape, in violation of R.C.2907.02 (A)(1)(b); and one count of gross sexual imposition, in violation of R.C. 2907.05 (A)(4). Defendant entered a plea of not guilty to the indictment at his arraignment on August 2, 2004.
 {¶ 3} Appellant filed numerous pretrial motions, including a motion to dismiss on speedy trial grounds, a motion for grand jury transcripts, and a motion ordering the State to produce school and counseling records of the victim. Following evidentiary hearings on the motion to dismiss and motion for grand jury transcripts, the trial courts denied both motions. At a status conference on February 16, 2005, the trial court ordered Wilson School and Moundbuilders Guidance Center to send the requested records to the Court by February 23, 2005. On February 22, 2005, the State filed a Motion to Continue after learning defense counsel was in possession of copies of the school records and had been for approximately two weeks. The State withdrew its motion after the trial court inspected the records and found such to be irrelevant to the issues involved in the matter. The trial commenced on February 23, 2005.
 {¶ 4} Brenda Jefferies, the victim, testified appellant took her shopping and to lunch sometime in November around Thanksgiving. After lunch, appellant and Brenda returned to appellant's home. Appellant suggested Brenda try on the shirt he had just purchased for her. Brenda went into the bathroom and tried on the shirt. She returned to the living room and sat on the couch with appellant, who kissed her on the lips. Thereafter, appellant and Brenda proceeded upstairs. Brenda stated she was sitting on appellant's bed, appellant knelt on the floor in front of her, removed her shirt and bra, and placed his mouth on Brenda's breasts. Brenda further testified appellant removed her pants and underwear, and placed his tongue on her "lady's part". Tr. at 123-124. Appellant removed his pants and boxers, and instructed Brenda to touch his penis with her hand. Brenda described appellant's penis as slimy and looking like a "little dingly worm". Tr. at 126. Brenda proceeded to the bathroom and put on her clothes. Appellant drove her home. Brenda only told her mother about appellant's removing her shirt and bra, and kissing her breasts. At trial, Brenda testified she did not disclose everything to her mother and during the first interview with police because she was scared.
 {¶ 5} Kathy Jefferies, Brenda's stepmother and appellant's sister, testified the only time Brenda was alone with appellant was the day after Thanksgiving in 2002, which she believed was November 29, 2002. On that day, appellant took Brenda Christmas shopping and to lunch. Although Brenda was unable to give the exact address of appellant's home, Jefferies testified Brenda and her brother often visited appellant's house on Friday evenings, where the three watched movies and ate pizza. Jefferies noted appellant lived at 15 West Oak Street, in Newark, Licking County, Ohio. Jefferies also testified Brenda's date of birth was March 7, 1990. Jefferies explained she did not contact the authorities immediately, and when she did she was very vague, because she did not want to put Brenda or their family "through this". Tr. at 156.
 {¶ 6} Detective Kenneth Ballantine of the Newark Police Department testified he became involved in the investigation of appellant in mid-December, 2002. Ballantine recalled he and Cindy Robson of Licking County Children's Services interviewed Brenda in January, 2003. Ballantine described Brenda as nervous and shy, and very quiet. The detective did not request a medical evaluation of Brenda because of the amount of time which had passed between the offense and the interview, and he recognized a medical examination would not have revealed anything based upon the allegations. Detective Ballantine attempted to make contact with appellant at his home on West Oak Street. The LEADS printout for appellant indicated 15 West Oak Street as appellant's address. Additionally, Ballantine learned appellant's license was to expire on his birthday in October, 2003. After appellant's birthday in 2003, Detective Ballantine reran his license, which still indicated 15 West Oak Street as appellant's address. In January, 2004, Detective Ballantine requested a warrant for appellant's arrest be issued. Detective Ballantine explained the time gap between the initial investigation and his request for the warrant was his inability to locate appellant and his desire to speak to appellant prior to getting the warrant.
 {¶ 7} Detective Ballantine conducted a second interview of Brenda on September 13, 2004. The prosecutor requested the second interview after Brenda made further disclosures during her preparation for Grand Jury. During the second interview, Brenda provided additional information about what had occurred on November 29, 2002.
 {¶ 8} After hearing all the evidence and deliberations, the jury returned a verdict of guilty on the gross sexual imposition count, but not guilty as to the rape count. The trial court imposed a three year term of imprisonment upon appellant. The trial court memorialized appellant's conviction and sentence via Entry filed April 4, 2005.
 {¶ 9} It is from this conviction and sentence appellant appeals, raising the following assignments of error:
 {¶ 10} "I. THE TRIAL COURT ERRED WHEN IT ENTERED A JUDGMENT OF CONVICTION FOR GROSS SEXUAL IMPOSITION AGAINST DEFENDANT/APPELLANT WHEN THE EVIDENCE WAS INSUFFICIENT TO SUPPORT HIS CONVICTION AND WHEN THE CONVICTION WAS AGINST (SIC) THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 11} "II. THE TRIAL COURT ERRED IN DENYING DEFENDANT/APPELLANT'S MOTION TO DISMISS IN VIOLATION OF HIS RIGHTS TO SPEEDY TRIAL.
 {¶ 12} "III. THE TRIAL COURT ERRED IN DENYING DEFENDANT/APPELLANT'S REQUEST FOR GRAND JURY TRANSCRIPT.
 {¶ 13} "IV. THE TRIAL COURT ERRED IN DENYING DEFENDANT/APPELLANT'S REQUEST FOR SCHOOL/MENTAL HEALTH RECORDS.
 I {¶ 14} In his first assignment of error, appellant raises manifest weight and sufficiency of the evidence claims.
 {¶ 15} In State v. Jenks (1981), 61 Ohio St.3d 259, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus.
 {¶ 16} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." State v. Thompkins, 78 Ohio St.3d 380,387, 1997-Ohio-52, citing State v. Martin (1983),20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v.DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
 {¶ 17} Appellant was convicted of gross sexual imposition, in violation of R.C. 2907.05(A)(4), which provides: "No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies: * * * (4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person."
 {¶ 18} In support of his position the evidence was insufficient to support a conviction for gross sexual imposition and such conviction was against the manifest weight of the evidence, appellant questions the reliability of Brenda Jefferies' testimony. Appellant submits the State's case rested solely with Brenda's testimony, but her credibility and ability to recollect events accurately must be questioned as she gave conflicting accounts and descriptions of what occurred on November 29, 2002. Appellant notes Brenda was unable to recall in what grade she was when the offense occurred, who her teacher was, and the year. Furthermore, according to appellant, Brenda changed her story. Upon review of the entire record in this matter, we find appellant's conviction was neither against the manifest weight nor the sufficiency of the evidence.
 {¶ 19} When Brenda was initially interviewed by Detective Ballantine and Cindy Robson, she only disclosed appellant had removed her top and bra, and placed his mouth on her breasts. As she was preparing to testify before the grand jury, Brenda further disclosed appellant had removed her pants and underwear and placed his tongue on her privates. She also revealed appellant removed his own clothing and instructed her to touch his penis. Brenda testified she did not tell her mother or the detective everything because she was scared. Although appellant claims the subsequent disclosure was supplemental in nature, we disagree. The additional disclosure was not inconsistent with her original testimony and gave more information regarding the full extent of the offense.
 {¶ 20} In the case sub judice, the jury was free to accept or reject any or all of the witnesses' testimony and assess the credibility of those witnesses. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence".State v. Craig (Mar. 23, 2000), Franklin App. No. 99AP7-39, citing State v. Nivens (May 28, 1996), Franklin App. No. 95APA09-1236. Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true.State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21, citing State v. Antill (1964), 176 Ohio St. 61, 67,197 N.E.2d 548; State v. Burke, Franklin App. No. 02AP-1238, 2003-Ohio-2889, citing State v. Caldwell (1992),79 Ohio App.3d 667, 607 N.E.2d 1096.
 {¶ 21} The jury clearly believed Brenda's testimony regarding appellant's removing her top and bra, and placing his mouth on her breasts. Alternatively, the jury did not believe Brenda's subsequent disclosure, which was the basis of the rape charge, as the jury acquitted appellant. Based upon the facts noted supra, and the entire record in this matter, we find there was sufficient, competent evidence to support appellant's conviction for gross sexual imposition, and such was not against the manifest weight of the evidence.
 {¶ 22} Appellant's first assignment of error is overruled.
 II {¶ 23} In his second assignment of error, appellant asserts the trial court erred in denying his motion to dismiss based upon speedy trial violations. We disagree.
 {¶ 24} The Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." The Sixth Amendment right to a speedy trial applies to state prosecutions by virtue of the Due Process Clause of the Fourteenth Amendment. Klopferv. North Carolina (1967), 386 U.S. 213, 222-223, 87 S.Ct. 988,993, 18 L.Ed.2d 1. Article I, Section 10 of the Ohio Constitution also guarantees an accused the right to a speedy trial.
 {¶ 25} "The Sixth Amendment right to a speedy trial is * * * not primarily intended to prevent prejudice to the defense caused by passage of time; that interest is protected primarily by the Due Process Clause and by statutes of limitations. The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges." State v. Triplett (1997), 78 Ohio St.3d 566, 568
(citing United States v. MacDonald (1982), 456 U.S. 1, 8,102 S.Ct. 1497, 1502, 71 L.Ed.2d 696, 704).
 {¶ 26} In Barker v. Wingo (1972), 407 U.S. 514,92 S.Ct. 2182, 33 L.Ed.2d 101, the United States Supreme Court set forth a four-part test to determine whether the state has violated an accused's right to a speedy trial. The four factors include: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) the prejudice to the defendant. Id. at 530.
 {¶ 27} "The first factor, the length of delay, is a `triggering mechanism,' determining the necessity of inquiry into the other factors. Doggett v. United States (1992),505 U.S. 647, 652, 112 S.Ct. 2686, 2691, 120 L.Ed.2d 520, 528, fn. 1;State v. Triplett (1997), 78 Ohio St.3d 556, 558. This factor involves a dual inquiry. Id. First, a threshold determination is made as to whether the delay was "presumptively prejudicial," triggering the Barker inquiry. Next, the length of the delay is again considered and balanced against the other factors. Id.
 {¶ 28} In this matter, the delay between the commission of the offense and the indictment was over a year and a half. A delay of more than one year is generally considered "presumptively prejudicial." Id.
 {¶ 29} We now turn to the second Barker factor. Despite his own actions, appellant argues the State made an insufficient effort to locate him. Appellant explains his family and friends knew he was employed by Tamarack Farms, a Newark company, but the police did not inquire at his place of employment. Additionally, appellant submits the police never inquired of his relatives as to his phone number, never checked a current phone book, and never tried to locate appellant's son with whom they were informed he was living. The State counters with the fact Kathy Jefferies, the victim's mother and appellant's sister, purposefully withheld information regarding appellant's whereabouts as well as the name of appellant's employer. Detective Ballantine made numerous visits during 2003, to the West Oak Street address. One time, the detective was told by a neighbor he had "just missed" appellant, which provided verification of appellant's address. We do not find the State was negligent or lacked diligence in its efforts to locate appellant.
 {¶ 30} With respect to the third Barker factor, we find appellant timely asserted his right after he was indicted. Accordingly, this factor weighs in appellant's favor.
 {¶ 31} The fourth Barker factor is the prejudice to appellant due to the delay. The Barker Court explained prejudice as follows: "Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. * * * Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." Id. at 532. (Footnote omitted.)
 {¶ 32} We find appellant has not established any prejudice from the delay. Kathy Jefferies remark "it's been two and a half years now" does not demonstrate appellant's defense was in any way hampered or impaired.
 {¶ 33} Based upon the foregoing, we cannot say appellant's right to a speedy trial was violated.
 {¶ 34} Appellant's second assignment of error is overruled.
 III {¶ 35} In his third assignment of error, appellant contends the trial court erred in denying his request to inspect the grand jury transcripts. Specifically, appellant argues because "Brenda Jefferies made wholesale changes to her material allegations, the trial court's failure to disclose the grand jury testimony deprived him of a fair adjudication of the allegations". Brief of Appellant at 22. We disagree.
 {¶ 36} In State v. Greer (1981), 66 Ohio St.2d 139, the Ohio Supreme Court held:
 {¶ 37} "1. Disclosure of grand jury testimony, other than that of the defendant and co-defendant, is controlled by Crim.R. 6(E), not Crim.R. 16(B)(1)(g), and the release of any such testimony for use prior to or during trial is within the discretion of the trial court.
 {¶ 38} "2. Grand jury proceedings are secret, and an accused is not entitled to inspect grand jury transcripts either before or during trial unless the ends of justice require it and there is a showing by the defense that a particularized need for disclosure exists which outweighs the need for secrecy. * * *
 {¶ 39} "3. Whether particularized need for disclosure of grand jury testimony is shown is a question of fact; but generally, it is shown where from a consideration of all the surrounding circumstances it is probable that the failure to disclose the testimony will deprive the defendant of a fair adjudication of the allegations placed in issue by the witness' trial testimony.
 {¶ 40} "4. When defense counsel asserts and establishes to the satisfaction of the trial court a particularized need for certain grand jury testimony, the trial court, along with defense counsel and counsel for the State, shall examine the grand jury transcript in camera and give to defense counsel those portions of the transcript relevant to the state's witness' testimony at trial, subject to the trial court's deletion of extraneous matter, and issuance of protective orders where necessary." Id. at paragraphs one, two, three, and four of the syllabus.
 {¶ 41} We have reviewed the record, and agree with the trial court appellant has not established a particularized need for the grand jury testimony. Accordingly, we conclude the trial court did not abuse its discretion by refusing to disclose it.
 {¶ 42} Appellant's third assignment of error is overruled.
 IV {¶ 43} In his final assignment of error, appellant submits the trial court erred in denying his request for school and mental health records. Appellant speculates the Department of Human Services, Moundbuilders Guidance Center, and Brenda Jefferies' school have records pertaining to her "which may contain evidence favorable and/or relevant to the defense or relevant to her credibility." Brief of Appellant at 22.
 {¶ 44} In a Judgment Entry filed February 16, 2005, the trial court ordered the Newark City School District, Moundbuilders Guidance Center, and the Department of Human Services to submit any and all records pertaining to Brenda Jefferies to the trial court for in-camera inspection by February 23, 2005. Upon receipt of the records, the trial court conducted an in-camera inspection of those records and determined the documents did not contain any information which would aid the defense. On February 22, 2005, the State received appellant's witness list as well as twenty-five pages of school records which appellant's defense counsel had had in his possession for approximately two weeks. Appellant's defense counsel never mentioned having these records, which counsel had previously requested the trial court to obtain. All of the requested records were proffered by appellant for appeal purposes.
 {¶ 45} This Court has reviewed those records. We find the trial court did not abuse its discretion in denying this motion.
 {¶ 46} Appellant's fourth assignment of error is overruled.
 {¶ 47} The Judgment of the Licking County Court of Common Pleas is affirmed.
Hoffman, J., Wise, P.J. and Gwin, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Licking County Court of Common Pleas is affirmed. Costs assessed to appellant.