OPINION
{¶ 1} Appellant, Guy M. Sloan, appeals the judgment entered by the Lake County Court of Common Pleas. The trial court found that Sloan is a mentally retarded person. In addition, the trial court found that Sloan committed the offenses of aggravated burglary, assault, and attempted gross sexual imposition. The trial court committed Sloan to a facility operated by the Ohio Department of Mental Retardation and Developmental Disabilities. *Page 2 
 {¶ 2} On April 24, 2006, M.L.[1] was changing her clothes in her bedroom. At that time, she was 15 years old. While M.L had her shirt off, she looked to her bedroom window. She noticed an individual staring at her through the window. In response, M.L. screamed, and the person left. M.L.'s father searched the backyard for the individual, but did not find anyone. The police were not contacted regarding this incident.
 {¶ 3} M.L recognized the individual as a person who lived in her neighborhood. However, at that time, she did not know his name. M.L. later identified this individual as Sloan.
 {¶ 4} The following evening, M.L. was at home with her younger brother, J.L., who was nine years old. M.L. put J.L. to bed about 9:00 p.m. M.L. was sick that day, and she went to bed about 9:20 p.m. Shortly after she fell asleep, M.L. was awoken by someone pulling her out of bed by her hair. The person threw M.L. onto her dresser. The person was holding M.L. down on the dresser by her sweatshirt and was attempting to pull down her sweatpants. At that time, M.L. was able to identify the individual as Sloan. Due to M.L.'s resistance, Sloan was unable to pull her pants down. Sloan started grabbing M.L.'s crotch area through her sweatpants. At that point, M.L. kicked Sloan in his genitals, and Sloan fell backwards.
 {¶ 5} M.L. escaped her bedroom and ran into J.L.'s room and woke him up. Then, M.L. and J.L. left the house and ran to a neighbor's home. The neighbor called 9-1-1 and M.L.'s parents, and police officers and M.L's parents both arrived within minutes. *Page 3 
 {¶ 6} M.L. described her attacker to the police. Thereafter, M.L. was taken to the front of Sloan's residence in a police car. Other officers escorted Sloan to the front porch in handcuffs. From the car, M.L. identified Sloan as her attacker.
 {¶ 7} Sloan was charged with aggravated burglary, in violation of R.C.2911.11(A)(1), a first-degree felony; assault, in violation of R.C.2903.13(A), a first-degree misdemeanor; attempted rape, in violation of R.C. 2923.02 and 2907.02(A)(2), a second-degree felony; and attempted gross sexual imposition, in violation of R.C. 2923.02 and 2907.05(A)(1), a fifth-degree felony. Sloan pled not guilty to the charges.
 {¶ 8} Sloan's attorney filed a motion for a competency evaluation. A hearing was held on the issue of Sloan's competency pursuant to R.C.2945.371(H). Following the hearing, the trial court found that Sloan was not competent to stand trial.
 {¶ 9} The state filed a motion for the trial court to retain jurisdiction over Sloan pursuant to R.C. 2945.39. An evidentiary hearing was held on the state's motion, where the state presented evidence in support of the alleged crimes. After the hearing, the trial court found, by clear and convincing evidence, that Sloan had committed aggravated burglary, assault, and attempted gross sexual imposition. The trial court also found, by clear and convincing evidence, that Sloan is a mentally retarded person. The trial court committed Sloan to the Ohio Department of Mental Retardation for a maximum term of ten years.
 {¶ 10} Sloan raises the following assignment of error:
 {¶ 11} "The trial court erred to the prejudice of the defendant-appellant when it found he committed aggravated burglary, assault and attempted gross sexual imposition against the manifest weight of the evidence." *Page 4 
 {¶ 12} Sloan was committed pursuant to R.C. 2945.39(A)(2), which provides:
 {¶ 13} "(2) On the motion of the prosecutor or on its own motion, the court may retain jurisdiction over the defendant if, at a hearing, the court finds both of the following by clear and convincing evidence:
 {¶ 14} "(a) The defendant committed the offense with which the defendant is charged.
 {¶ 15} "(b) The defendant is a mentally ill person subject to hospitalization by court order or a mentally retarded person subject to institutionalization by court order."
 {¶ 16} Sloan claims the trial court's judgment is against the manifest weight of the evidence. Initially, we address whether the civil or criminal manifest weight of the evidence standard is appropriate in this matter. The Fifth Appellate District has used the civil standard when determining whether a trial court's findings under R.C. 2945.39(A)(2) were against the manifest weight of the evidence. State v. Bretz (Dec. 30, 1999), 5th Dist. No. CA-98-001, 1999 Ohio App. LEXIS 6443, at *24-25. In addition, we note the statute requires that the trial court make its findings by "clear and convincing evidence." R.C.2945.39(A)(2). This is the exact standard used in Ohio's sexual-predator statute. R.C. 2950.09(B)(4). The Supreme Court of Ohio has recently held that the civil manifest-weight-of-the-evidence standard is to be used to review sexual-predator determinations. State v. Wilson,113 Ohio St.3d 382, 2007-Ohio-2202, syllabus. Since proceedings under R.C. 2950.09 and2945.39 are both civil proceedings that are quasi-criminal in nature, we will apply a civil manifest-weight-of-the-evidence standard to this matter.[2] *Page 5 
 {¶ 17} The civil manifest-weight-of-the-evidence standard is "[judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C. E.Morris Co. v. Foley Construction Co. (1978), 54 Ohio St.2d 279, syllabus.
 {¶ 18} Sloan does not challenge the trial court's finding that he is a mentally retarded person. He only challenges the trial court's findings that he committed the offenses.
 {¶ 19} The trial court found Sloan committed aggravated burglary, in violation of R.C. 2911.11, which provides, in part:
 {¶ 20} "(A) No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:
 {¶ 21} "(1) The offender inflicts, or attempts or threatens to inflict physical harm on another[.]"
 {¶ 22} The trial court also found that Sloan committed the offense of assault, in violation of R.C. 2903.13, the relevant portions of which are:
 {¶ 23} "(A) No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn." *Page 6 
 {¶ 24} Finally, the trial court found that Sloan committed the offense of attempted gross sexual imposition, in violation of R.C. 2907.05 and of R.C. 2923.02. R.C. 2907.05 provides, in part:
 {¶ 25} "(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
 {¶ 26} "(1) The offender purposely compels the other person, or one of the other persons, to submit by force or threat of force."
 {¶ 27} R.C. 2923.02, Ohio's attempt statute, provides:
 {¶ 28} "(A) No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."
 {¶ 29} M.L. testified that Sloan entered her room at night, without her permission; pulled her out of bed by her hair; pushed her onto her dresser; attempted to remove her sweatpants; and touched her crotch area over her pants. If believed, M.L.'s testimony was adequate to support the trial court's finding that Sloan committed the crimes of burglary, assault, and attempted gross sexual imposition.
 {¶ 30} Sloan raises several issues in an attempt to discredit M.L.'s testimony. In regard to these issues, we note the weight to be given to the evidence and the credibility of witnesses are primarily matters for the trier-of-fact to decide. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. In assessing the witnesses' credibility, the trial court, as the trier-of-fact, had the opportunity to observe *Page 7 
the witnesses' demeanor, body language, and voice inflections. State v.Miller (Sept. 2, 1993), 8th Dist. No. 63431, 1993 Ohio App. LEXIS 4240, at *5-6. Thus, the trial court was "clearly in a much better position to evaluate the credibility of the witnesses than [this] court." Id.
 {¶ 31} First, Sloan asserts that M.L.'s testimony regarding the length of the attack was incredible. M.L. testified that the attack on her dresser lasted "probably about five minutes." Sloan argues that if the attack actually lasted this long, it would be doubtful that any items would be left on M.L.'s dresser. We disagree. M.L. was giving a general estimate as to how long the attack lasted. It is important to remember that M.L.'s perception of time could have reasonably been skewed, in that she was awoken by a strange man in her room and was trying to defend herself from a sexual attack. Further, state's exhibit six was a photograph of M.L.'s dresser, which is a large dresser. The size of the dresser was sufficient for M.L. to be sitting on the dresser without knocking off all of the items.
 {¶ 32} Sloan argues that M.L's testimony was incredible because, if the attack was as severe as she described, she would have visible injuries. We note that M.L testified Sloan was holding her down by her chest and attempting to remove her sweatpants. Such actions may not have left noticeable injuries. Sloan also points out that, while M.L. testified that she was missing some hair as a result of the attack, no hair was found in her room. There was no evidence presented regarding the exact amount of hair that was pulled out of M.L.'s head. Moreover, the fact that no hair was found in her room is not determinative of this matter. *Page 8 
 {¶ 33} Next, Sloan argues that there were no physical injuries found on him. First, we note that the officers who arrested Sloan did not testify. Patrolman Martin Turek drove M.L. past Sloan's residence so she could identify him, as other officers escorted Sloan in handcuffs. In addition, we note M.L. only described one "really hard" kick, which was to Sloan's genitals.
 {¶ 34} Sloan contends that M.L.'s testimony that she was screaming is unbelievable because J.L. was not awoken by her screams. J.L. was nine years old and sleeping in another room. As the state notes, he is apparently a sound sleeper, because M.L. had to physically drag him out of bed to wake him up.
 {¶ 35} Sloan contends M.L.'s testimony was different than the statement she gave to the police. He argues she told the police that she was pulled from her bed directly onto her dresser, while she testified at trial that she was pulled from her bed to a standing position and, then, pushed onto the dresser. Also, Sloan argues that M.L. told police she was lying on the dresser with Sloan on top of her, while she testified at trial that she was sitting on the dresser with Sloan facing her. We note M.L. actually testified that she was "kind of leaning back a little bit on the wall, [she] wasn't sitting fully up on the dresser." Neither of these alleged discrepancies in M.L.'s version of the events is momentous enough to render her entire testimony incredible.
 {¶ 36} Next, Sloan notes that M.L. did not initially report her allegations that Sloan touched her in the crotch area to the police. Instead, M.L. told her mother about this incident a month later. At that time, the police were called and came to the house to take a statement. M.L. testified that she did not initially report this incident because she was embarrassed. The fact that a teenage girl is embarrassed about a sexual *Page 9 
attack of this nature is understandable. In this matter, M.L.'s "additional disclosure was not inconsistent with her prior [statement] and gave more information regarding the full extent of the offense."State v. Davis, 5th Dist. No. 05-CA-48, 2006-Ohio-1958, at ¶ 19. Moreover, the trial court, as the trier-of-fact, "was free to accept or reject any or all of" M.L.'s testimony. Id. at ¶ 20.
 {¶ 37} Several months after the attack, M.L. told the police that someone threatened her at school regarding her testimony in this matter. Police officers confronted M.L. about fabricating the story and asked her to take a voice stress test, which M.L. refused to do. There was no evidence presented in this matter demonstrating that M.L. did, in fact, fabricate the story about being threatened. Further, even if the trial court believed that M.L. had fabricated the story, it was still free to believe her testimony regarding the underlying events in this matter. Id.
 {¶ 38} Finally, Sloan argues that there was no physical evidence linking him to the crimes. Sloan notes that his fingerprints were not found on the screen to M.L.'s window or a torn photograph found on the floor of M.L.'s bedroom, and his footprints were not found outside. However, Patrolman Turek testified that fingerprints from the scene were tested, but the results were inconclusive because the prints were only partial. Also, he testified that the soil outside the bedroom window was not "conducive to leaving good footprints."
 {¶ 39} All of Sloan's arguments concern matters regarding the weight to be given to the evidence and the credibility of witnesses. Again, these were matters for the trial court to decide. State v. DeHass, supra. *Page 10 
 {¶ 40} The trial court's findings, that Sloan committed aggravated burglary, assault, and attempted gross sexual imposition by clear and convincing evidence, were supported by competent, credible evidence.
 {¶ 41} Sloan's assignment of error is without merit.
 {¶ 42} The judgment of the trial court is affirmed.
MARY JANE TRAPP, J., concurs,
COLLEEN MARY OTOOLE, J., concurs in judgment only.
[1] We have substituted the victim's initials in place of her name.
[2] As an aside, we note that we would reach the same outcome in this matter if we reviewed it under the criminal manifest-weight-of-the-evidence standard. *Page 1