OPINION
{¶ 1} Appellant, Wayne M. Mansfield, appeals the judgment entered by the Lake County Court of Common Pleas. The trial court sentenced Mansfield to an aggregate prison term of 18.5 years for his convictions for importuning, disseminating matter harmful to juveniles, rape, and unlawful sexual conduct with a minor. In addition, Mansfield was adjudicated a sexual predator. *Page 2 
 {¶ 2} From the late 1990s through the time of his arrest, Mansfield lived in Madison, Ohio. Mansfield worked for a real estate company, and his job was to clean out houses and yards.
 {¶ 3} In October 2005, victim #1 was an 11-year-old boy.[1] Victim #1 helped Mansfield clean up some yards. After they had finished working, victim #1 and Mansfield returned to Mansfield's home. At that time, Mansfield showed victim #1 pornographic pictures and a dildo. Mansfield told victim #1 that an individual in one of the pictures was victim #2, a boy who lived across the street from Mansfield. Mansfield offered to perform oral sex on victim #1. He told victim #1 that "men's saliva makes the dick get bigger." Victim #1 declined Mansfield's advances and reported Mansfield's conduct to his mother. Victim #1's mother contacted the Madison Police Department.
 {¶ 4} Victim #2 lived across the street from Mansfield. Victim #2 was 12 to 15 years old during the relevant times of this case. On various occasions, Mansfield would baby-sit victim #2 and would drive him to or from school. Also, Mansfield took victim #2 fishing and hunting. When victim #2 was 14, he began helping Mansfield clean out houses, and he was paid for this work. Mansfield often showed victim #2 Playboy magazines and videos when victim #2 was at his home. In addition, Mansfield asked to perform oral sex on victim #2 on several occasions. Victim #2 rejected most of Mansfield's requests. However, victim #2 testified that Mansfield performed oral sex on him a total of four to six times. According to victim #2, he was 12 years old the first time Mansfield performed oral sex on him. Also, on one occasion, Mansfield forced victim #2 to touch Mansfield's penis with victim #2's hand. *Page 3 
 {¶ 5} After the incident involving victim #1 was reported to the police, victim #2 was asked to come to the police station to be interviewed. Officer William Hodakievic and Detective Timothy Doyle of the Madison Police Department questioned victim #2 about sexual activity that may have occurred between himself and Mansfield. Initially, victim #2 denied any sexual activity occurred. However, Officer Hodakievic left the room, and Detective Doyle interviewed victim #2 alone. Victim #2 knew Detective Doyle from a mentoring program at victim #2's school. Victim #2 told Detective Doyle that Mansfield had performed oral sex on him.
 {¶ 6} At Detective Doyle's request and with his parents' permission, victim #2 agreed to wear a wire to record conversations between himself and Mansfield. Victim #2 went into Mansfield's home and engaged in general conversation with him, talking about various topics, including Mansfield's birthday party. At one point, Mansfield went to get something out of the refrigerator. As he passed victim #2, Mansfield grabbed victim #2 in his groin area. Victim #2 responded by telling Mansfield, "no dude, that's gay."
 {¶ 7} Based upon the information provided to him by victim #1 and victim #2, Detective Doyle obtained a search warrant for Mansfield's home. Detective Doyle executed the search warrant at 4:42 p.m. on October 22, 2005. Detective Doyle arrested Mansfield, removed him from his home, and placed him in handcuffs. Mansfield was cooperative. Detective Doyle removed the handcuffs and placed Mansfield in the front seat of his unmarked police car. Detective Doyle informed Mansfield of his Miranda rights by reading them with Mansfield from a preprinted witness statement form. Mansfield remained in Detective Doyle's car while his home was being searched. During this time, Mansfield provided two written witness *Page 4 
statements while he was in the car with Detective Doyle. He gave one additional written statement after the search was concluded from inside his house at the kitchen table. In his statements, Mansfield admitted to having oral sex with victim #2.
 {¶ 8} Mansfield was indicted on six counts. The first three counts of the indictment related to Mansfield's interaction with victim #1. These counts were one count of importuning, in violation of R.C. 2907.07(A) and a fourth-degree felony, and two counts of disseminating matter harmful to juveniles, in violation of R.C. 2907.31(A)(1) and fourth-degree felonies. The last three counts of the indictment pertained to Mansfield's interaction with victim #2. These counts were one count of rape, in violation of R.C. 2907.02(A)(1)(b) and a first-degree felony, and two counts of unlawful sexual conduct with a minor, in violation of R.C. 2907.04(A) and third-degree felonies.
 {¶ 9} Initially, Mansfield pled not guilty to these charges. However, on December 13, 2005, Mansfield pled guilty to one count of importuning, one count of rape, and one count of unlawful sexual conduct with a minor. Upon recommendation of the state, the remaining counts were dismissed. The trial court deferred sentencing and referred the matter to the probation department for completion of a presentence investigation ("PSI") report.
 {¶ 10} Prior to being sentenced, Mansfield filed a motion to withdraw his guilty plea. He also filed a motion for new counsel. Following a hearing on Mansfield's motions, the trial court granted both his motion to withdraw his guilty plea and his motion for new counsel.
 {¶ 11} Mansfield filed a motion to suppress the evidence obtained as a result of his arrest. Mansfield argued his statements given to the police were obtained in *Page 5 
violation of his Miranda rights. The state filed a response in opposition to Mansfield's motion to suppress. On March 6, 2006, the trial court held a hearing on Mansfield's motion. Detective Doyle and victim #2's father testified for the state. The trial court denied Mansfield's motion to suppress.
 {¶ 12} In April 2006, defense counsel filed a motion for a competency evaluation to determine if Mansfield was competent to stand trial. The trial court referred Mansfield to the Northcoast Behavioral Healthcare System ("Northcoast") for a competency evaluation. In August 2006, a hearing was held on Mansfield's competence to stand trial. The parties stipulated to the admission of a report from Northcoast, which concluded that, in light of his current mental state, Mansfield was not competent to stand trial, as he was not capable of understanding the charges against him or assisting with his defense. The trial court found Mansfield not competent to stand trial and committed him to Northcoast to restore his competency.
 {¶ 13} In December 2006, another hearing was held on Mansfield's competence to stand trial. The parties stipulated to the admission of a new report from Northcoast, which concluded that, at that time, Mansfield was capable of understanding the charges against him and assisting with his defense. The trial court found Mansfield competent to stand trial.
 {¶ 14} Upon Mansfield's motion, the trial court severed the counts of the indictment for purposes of trial. The trial court ordered that the charges relating to victim #1, counts one, two, and three, would be tried separately from the charges relating to victim #2, counts four, five, and six.
 {¶ 15} The matter proceeded to a jury trial on counts four, five, and six. Detective Doyle, Officer Hodakievic, victim #2, and victim #2's parents testified for the *Page 6 
state. Following the state's case-in-chief, Mansfield moved for acquittal pursuant to Crim. R. 29. The trial court overruled Mansfield's motion for acquittal. In addition, Mansfield renewed his motion to suppress to preserve the issue for appeal. The trial court also overruled this motion. Mansfield did not present any evidence. The jury found Mansfield guilty on counts four, five, and six.
 {¶ 16} Following the jury trial on counts four, five, and six, Mansfield withdrew his not guilty plea in relation to counts one, two, and three and pled guilty to those charges.
 {¶ 17} The trial court sentenced Mansfield to a nine-year prison term for his rape conviction and four-year prison terms on each of his unlawful sexual conduct with a minor convictions. The trial court ordered these sentences be served consecutively to each other. The trial court sentenced Mansfield to 18-month prison terms for his convictions for importuning and disseminating matter harmful to juveniles. The three 18-month sentences were ordered to be served concurrently to each other, but consecutively to the other sentences imposed by the court. Thus, Mansfield's aggregate sentence was 18.5 years. In addition, the trial court adjudicated Mansfield a sexual predator.
 {¶ 18} Mansfield has timely appealed the trial court's judgment entry to this court. On appeal, he raises ten assignments of error. His first assignment of error is:
 {¶ 19} "The trial court erred when it denied defendant-appellant's motion to suppress in violation of his due process rights guaranteed under the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution and Section 10, Article I of the Ohio Constitution."
 {¶ 20} "Appellate review of a motion to suppress presents a mixed question of law and fact." State v. Burnside, 100 Ohio St.3d 152,2003-Ohio-5372, at ¶ 8. The *Page 7 
appellate court must accept the trial court's factual findings, provided they are supported by competent, credible evidence. Id., citingState v. Fanning (1982), 1 Ohio St.3d 19. Thereafter, the appellate court must independently determine whether those factual findings meet the requisite legal standard. Id., citing State v. McNamara (1997),124 Ohio App.3d 706.
 {¶ 21} Mansfield argues that the trial court erred by denying his motion to suppress since he did not have the mental capacity to waive his Miranda rights.
 {¶ 22} "A court, in determining whether a pretrial statement is involuntary, `should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement.'" State v. Mason (1998), 82 Ohio St.3d 144, 154, quoting State v. Edwards (1976), 49 Ohio St.2d 31, paragraph two of the syllabus.
 {¶ 23} Mansfield was interviewed by Detective Doyle. There were no other officers present during the interview. Mansfield sat in the front seat of Detective Doyle's unmarked police car. He was not handcuffed. Detective Doyle read the Miranda warnings to Mansfield. In addition, on each of the three written statements Mansfield provided, theMiranda warnings were preprinted on the top of the page. Each time, Mansfield acknowledged that he was waiving his Miranda rights. Detective Doyle permitted Mansfield to exit the vehicle to smoke cigarettes on multiple occasions. Also, Detective Doyle permitted Mansfield to re-enter his house to take his prescription medication. With regard to Mansfield's competency, Detective Doyle testified at the suppression hearing that Mansfield was articulate and able to convey a train of thought. *Page 8 
 {¶ 24} Mansfield cites State v. Rossiter (1993), 88 Ohio App.3d 162 in support of his argument that he lacked the capacity to waive hisMiranda rights. In Rossiter, a clinical psychologist testified that the defendant was mildly mentally retarded and that he would have difficulty understanding his constitutional rights and the concept of waiving those rights. Id. at 165. Further, in Rossiter, the trial court found:
 {¶ 25} "`It is quite clear to this Court after observing Defendant on the stand, observing his demeanor, observing his facial expressions, observing his method of answering and the hesitancy and answers given, the Defendant in all likelihood did not understand his Constitutional Rights and clearly did not waive those rights before making the oral statement to Detective Nichols.'" Id. at 165-166.
 {¶ 26} This case is distinguishable from State v. Rossiter for several reasons. First, in the instant matter, there was no expert testimony presented at the suppression hearing on the issue of Mansfield's competency to waive his Miranda rights. Instead, the evidence presented at the suppression hearing suggests that Mansfield understood hisMiranda rights. On each of Mansfield's statements, he wrote "yes" in response to the preprinted questions of "[d]o you understand each of your rights" and "[w]ith those rights in mind, do you voluntarily waive them?" Further, Detective Doyle testified that Mansfield was articulate and able to convey a train of thought.
 {¶ 27} In addition, Mansfield did not testify at the suppression hearing, so the trial court did not have an opportunity to observe his demeanor and cognitive abilities.
 {¶ 28} Finally, in the case sub judice, the trial court found that Mansfield had no "signs of intellectual impairment." Again, in reviewing a trial court's determination on a motion to suppress, we must accept the trial court's findings of fact. See State v. Burnside, supra, citingState v. Fanning, supra. Due to the numerous factual *Page 9 
differences between the case sub judice and State v. Rossiter, Mansfield's reliance on Rossiter is misplaced.
 {¶ 29} In addition, "[a] defendant's mental condition is but one factor in the totality of circumstances to be considered in determining voluntariness." State v. Hughbanks, 99 Ohio St.3d 365, 2003-Ohio-4121, at ¶ 61. Thus, "while the state must prove voluntariness by a preponderance of the evidence, a low mental aptitude of the interrogee is not enough by itself to show police overreaching." State v. Bies
(1996), 74 Ohio St.3d 320, 323, citing State v. Hill (1992),64 Ohio St.3d 313, 318.
 {¶ 30} Mansfield argues that his poor grammar and the multiple misspellings in his written statements refute Detective Doyle's testimony that he understood the Miranda warnings. Mansfield does not cite any authority for the proposition that grammatical or spelling errors correlate to an individual's inability to comprehend the language contained in the Miranda warnings, which in this case were provided in both oral and written form. We do not believe that an individual's difficulty with spelling and/or grammar necessarily indicates that the individual is unable to comprehend that he or she is knowingly and intelligently waiving his or her Miranda rights.
 {¶ 31} Mansfield also argues that the trial court erred by failing to grant his renewed motion to suppress made at the trial. He contends that the trial court should have reconsidered his motion in light of the evidence presented at the initial competency evaluation that he was not able to understand the charges against him or assist with his defense. Mansfield argues that if he was not competent to stand trial in August 2006, then he was not competent to waive his Miranda rights in October 2005.
 {¶ 32} We note there is no medical evidence in the record regarding Mansfield's level of mental competence in October 2005. We cannot say, as a matter of law, that *Page 10 
the trial court erred by failing to consider evidence that Mansfield was not competent nine months after the statements were given. This is especially true in light of the fact that Mansfield was declared competent in December 2006. Thus, there is evidence in the record that Mansfield's level of competence has fluctuated over time.
 {¶ 33} Finally, we note there is a judgment entry in the record, filed on June 20, 2007, which granted Mansfield's motion for public payment of an expert witness. This expert witness was to "consider the issue of the reliability or credibility of defendant's confession." Thus, the trial court knew that Mansfield had an expert witness evaluate his statements to consider whether he was competent to confess. Presumably, had this expert's findings been favorable to Mansfield, Mansfield's trial counsel would have moved the trial court to introduce the expert's findings and asked the trial court to reconsider his motion to suppress in light of the new evidence.
 {¶ 34} In light of the totality of the circumstances, the trial court did not err by denying Mansfield's motion to suppress.
 {¶ 35} Mansfield's first assignment of error is without merit.
 {¶ 36} Mansfield's second assignment of error is:
 {¶ 37} "Defendant-appellant was denied effective assistance of counsel in violation of the Sixth Amendment of the United States Constitution."
 {¶ 38} In State v. Bradley, the Supreme Court of Ohio adopted the following test to determine if counsel's performance is ineffective: "[c]ounsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus, adopting the test set forth inStrickland v. Washington *Page 11 
(1984), 466 U.S. 668. Moreover, "`a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. * * * If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, * * * that course should be followed.'" Id. at 143, quoting Strickland, 466 U.S. at 697.
 {¶ 39} Mansfield argues his trial counsel was ineffective on two grounds. First, he contends counsel was ineffective for failing to move the trial court to reconsider the motion to suppress in light of the evidence from his competency evaluations. Second, he asserts counsel was ineffective for failing to object to an alleged hearsay statement made during Detective Doyle's testimony.
 {¶ 40} Initially, we will address Mansfield's argument that his trial counsel was ineffective for failing to move the trial court to reconsider the motion to suppress in light of the evidence from his competency evaluations.
 {¶ 41} Following the determination that Mansfield was not competent to stand trial, defense counsel moved the court for public payment of a defense expert. The trial court granted this motion. In the motion, defense counsel explains that the expert was needed to explore the issues of Mansfield's "competency to confess," as well as the possibility of "a false confession due to [Mansfield's] limited intellectual functioning."
 {¶ 42} For reasons not specifically stated in the record, Mansfield's trial counsel decided not to base his renewal of the motion to suppress on Mansfield's mental competency or to call the expert at trial. Perhaps the expert's testimony would not have supported the theory that Mansfield was not competent to waive his Miranda rights and provide a valid confession. In fact, it appears that the expert's, Dr. Afsarifard's, opinion was favorable to the state. This is because the state added Dr. Afsarifard to its witness *Page 12 
list and indicated that it may use his report as an exhibit at trial. Regardless of the specific reason Mansfield's trial counsel did not call Dr. Afsarifard, trial counsel's decision was one of trial strategy. "The Supreme Court of Ohio has held that trial strategy decisions should not be second-guessed and that `"a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."'" State v. Ogletree, 11th Dist. No. 2005-P-0040, 2006-Ohio-6107, at ¶ 64, quoting State v. Mason,82 Ohio St.3d at 157-158, quoting Strickland, 466 U.S. at 689.
 {¶ 43} Mansfield's trial counsel was not ineffective for failing to renew his motion to suppress based on the theory that Mansfield was not competent to waive his Miranda rights and provide a valid confession.
 {¶ 44} Mansfield also argues that his trial counsel was ineffective for failing to object to the following testimony of Detective Doyle:
 {¶ 45} "Q. Did you check [Mansfield's] criminal history?
 {¶ 46} "A. No.
 {¶ 47} "Q. Okay. At some point you did, though; correct?
 {¶ 48} "A. Yes.
 {¶ 49} "Q. And you were able to determine how old Wayne Mansfield is?
 {¶ 50} "A. Yes, I was.
 {¶ 51} "Q. How old is Wayne Mansfield?
 {¶ 52} "A. Today I believe — well his date of birth is 10/16/64, which at the time of the incident he was forty-one years old or at the time of the complaint that came into our department he was forty-one years old." *Page 13 
 {¶ 53} We will address this ineffectiveness claim on the ground of lack of sufficient prejudice. State v. Strickland, supra. Mansfield has not demonstrated how he was prejudiced by this action. Had a timely objection to Officer Doyle's testimony regarding Mansfield's age been made, the state would have had the opportunity to demonstrate Mansfield's age in another manner.
 {¶ 54} Mansfield's second assignment of error is without merit.
 {¶ 55} Mansfield's third assignment of error is:
 {¶ 56} "The trial court erred to the prejudice of the defendant-appellant when it denied his motion for acquittal made pursuant to Crim. R. 29(A)."
 {¶ 57} A trial court shall grant a motion for acquittal when there is insufficient evidence to sustain a conviction. Crim. R. 29(A). When determining whether there is sufficient evidence presented to sustain a conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v. Virginia
(1979), 443 U.S. 307.
 {¶ 58} Mansfield does not challenge the sufficiency of the evidence regarding his rape conviction. In regard to his unlawful sexual conduct with a minor convictions, Mansfield does not challenge the state's evidence that sexual conduct occurred. Instead, he only challenges the sufficiency of the state's evidence regarding the element of the offense that he was more than ten years older than victim #2.
 {¶ 59} Mansfield was charged with two counts of unlawful sexual conduct with a minor, in violation of R.C. 2907.04(A), which provides, in part: *Page 14 
 {¶ 60} "(A) No person who is eighteen years of age or older shall engage in sexual conduct with another, who is not the spouse of the offender, when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard.
 {¶ 61} "(B) Whoever violates this section is guilty of unlawful sexual conduct with a minor.
 {¶ 62} "* * *
 {¶ 63} "(3) Except as otherwise provided in division (B)(4) of this section, if the offender is ten or more years older than the other person, unlawful sexual conduct with a minor is a felony of the third degree."
 {¶ 64} Victim #2 testified that he was born in 1990. Detective Doyle testified that Mansfield was born in 1964. Accordingly, the state presented evidence that Mansfield is more than 25 years older than victim #2.
 {¶ 65} Mansfield argues that the state's evidence regarding his age was hearsay and should not have been admitted. However, when conducting a sufficiency of the evidence analysis, this court is to look at the actual evidence admitted at trial, both admissible and inadmissible. SeeState v. Jeffries, 11th Dist. No. 2005-L-057, 2007-Ohio-3366, at ¶ 100, citing Lockhart v. Nelson (1988), 488 U.S. 33, 34.
 {¶ 66} Moreover, we note the Supreme Court of Ohio has held that "`circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof.'" State v. Biros (1997), 78 Ohio St.3d 426, 447, quoting State v. Jenks, 61 Ohio St.3d 259, paragraph one of the syllabus. Victim #2 testified that he was eight to ten years old when Mansfield moved into the house across the street from his parents. This is *Page 15 
circumstantial evidence that Mansfield was more than ten years older than victim #2, as the jury could infer that Mansfield was older than 18 to 20 years old when he moved into the house.
 {¶ 67} The state presented sufficient evidence for a trier of fact to find that Mansfield committed the offenses of unlawful sexual conduct with a minor, including the requisite ten-year age difference between the offender and the victim.
 {¶ 68} Mansfield's third assignment of error is without merit.
 {¶ 69} Mansfield's fourth assignment of error is:
 {¶ 70} "The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence."
 {¶ 71} In determining whether a verdict is against the manifest weight of the evidence, the Supreme Court of Ohio has adopted the following language as a guide:
 {¶ 72} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" State v. Thompkins (1997), 78 Ohio St.3d 380, 387. (Citations omitted.)
 {¶ 73} The weight to be given to the evidence and the credibility of witnesses are primarily matters for the jury to decide. State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Also, in assessing the witnesses' credibility, the jury, as the trier-of-fact, had the opportunity to observe the witnesses' demeanor, body language, and voice inflections. State v. Miller (Sept. 2, 1993), 8th Dist. No. 63431, *Page 16 
1993 Ohio App. LEXIS 4240, at *5-6. Thus, the jury was "clearly in a much better position to evaluate the credibility of witnesses than [this] court." Id.
 {¶ 74} Mansfield argues that victim #2's testimony that sexual conduct occurred and that he was only 12 years old when it first occurred was not credible.
 {¶ 75} Mansfield argues that victim #2's testimony about the sexual conduct is not credible because he initially told the officers that no sexual activity occurred between himself and Mansfield. We disagree. It is not incredible that a teenage boy would deny sexual activity between himself and an adult male. Victim #2 may have been embarrassed about the situation and uncomfortable relaying the details of the event to an unknown police officer. See, e.g., State v. Sloan, 11th Dist. No. 2007-L-053, 2007-Ohio-6558, at ¶ 36. Victim #2 agreed to talk to Detective Doyle, whom he trusted, alone. Victim #2 described the sexual activity between himself and Mansfield. His statement to Detective Doyle was generally consistent with his trial testimony.
 {¶ 76} Further, we note that victim #2's testimony that Mansfield performed oral sex on him was corroborated by Mansfield himself, who admitted to this act in his statement to the police.
 {¶ 77} Mansfield also claims victim #2's testimony was against the manifest weight of the evidence because he did not specify that the first incident occurred when he was 12 years old until his second statement. In his second statement and in his trial testimony, victim #2 states that the first sexual contact occurred in 2002, when he was 12 years old. Again, this evidence was corroborated by Mansfield himself, who stated in his 2005 statement that the first incident occurred three years ago.
 {¶ 78} The jury did not lose its way or create a manifest miscarriage of justice by finding Mansfield guilty of rape and unlawful sexual conduct with a minor. *Page 17 
 {¶ 79} Mansfield's fourth assignment of error is without merit.
 {¶ 80} Mansfield's fifth assignment of error is:
 {¶ 81} "The trial court committed reversible error when it labeled the defendant-appellant a sexual predator against the manifest weight of the evidence."
 {¶ 82} The trial court adjudicated Mansfield a sexual predator pursuant to former R.C. 2950.09.[2] The Supreme Court of Ohio has held the following regarding the standard of review from a sexual-predator adjudication:
 {¶ 83} "Because sex-offender-classification proceedings under R.C. Chapter 2950 are civil in nature, a trial court's determination in a sex-offender-classification hearing must be reviewed under a civil manifest-weight-of-the-evidence standard and may not be disturbed when the judge's findings are supported by competent, credible evidence."State v. Wilson, 113 Ohio St.3d 382, 2007-Ohio-2202, syllabus.
 {¶ 84} A trial court has to determine by clear and convincing evidence that the offender is a sexual predator. Former R.C. 2950.09(C)(2)(b). In making its determination, a trial court should consider all relevant factors, which include, but are not limited to, the following:
 {¶ 85} "(1) [T]he offender's age; (2) the offender's prior criminal record; (3) the age of the victim; (4) whether the sexually oriented offense for which sentence was imposed involved multiple victims; (5) whether the offender used drugs or alcohol to impair the victim or to prevent the victim from resisting; (6) whether the offender has participated in available programs for sexual offenders; (7) any mental illness or mental disability of the offender; (8) the nature of the offender's conduct and whether that *Page 18 
conduct was part of a demonstrated pattern of abuse; (9) whether the offender displayed cruelty during the commission of the crime; and (10) any additional behavioral characteristics that contributed to the offender's conduct." State v. Naples, 11th Dist. No. 2000-T-0122, 2001 Ohio App. LEXIS 5639, at *4-5, citing R.C. 2950.09(B)(2)(a)-(j).[3]
 {¶ 86} Regarding these factors, the trial court found:
 {¶ 87} "a.) The defendant was thirty eight (38) through forty one (41) years of age at the time of the offenses in Counts 4, 5 and 6; and forty one (41) years of age at the time of the offenses in Counts 1, 2 and 3;
 {¶ 88} "b.) The defendant has no prior criminal record;
 {¶ 89} "c.) The victim of the offense set forth in Count 4 was eleven years old [sic] at the time of the commission of that offense and was twelve to fifteen (12-15) years old at the time of the commission of the offenses set forth in Counts 5 and 6; that the victim of the offenses set forth in Counts 1-3 was eleven (11) years of age at the time of the crimes;
 {¶ 90} "d.) The sexually oriented offenses for which sentence was imposed involved multiple victims (two victims), both male and of tender years;
 {¶ 91} "e.) The defendant did not use drugs or alcohol to impair the victims or to prevent the victims from resisting;
 {¶ 92} "f.) The defendant has not previously been convicted of a criminal offense and, accordingly, had no previously imposed sentence to complete and has not participated in any programs for sexual offenders; *Page 19 
 {¶ 93} "g.) The defendant does not have a mental illness or mental disability, but does have personality disorders which include: Pedophilia, Sexually Attracted to Both, Nonexclusive Type; Depressive Disorder; and is of borderline intellect;
 {¶ 94} "h.) The defendant's sexual actions were part of a demonstrated pattern of abuse in that he performed and solicited oral sex on males of tender years;
 {¶ 95} "i.) The nature of the defendant's actions during the commission of the sexually oriented offenses did not display cruelty;
 {¶ 96} "j.) The defendant's acts were planned and not impulsive;
 {¶ 97} "[k.]) Additional behavioral characteristics considered by the Court include the report of Dr. Jeffrey Rindsberg which provides that, based on testing, this defendant falls within the high to moderate range of risk factors of repeating this behavior and concludes that this defendant has [a] strong and high likelihood of repeating this behavior in the future[.]"
 {¶ 98} Mansfield argues that many of the individual factors do not support a sexual predator classification. We agree that some of the factors weigh against a sexual-predator adjudication. However, this court has held that all factors do not need to be present to support a sexual-predator adjudication:
 {¶ 99} "A trial court may find an offender to be a sexual predator `even if only one or two statutory factors are present, so long as the totality of the relevant circumstances provides clear and convincing evidence that the offender is likely to commit a future sexually-oriented offense.'" State v. Randall (2001),141 Ohio App.3d 160, 166, quoting State v. Clutter (Jan. 28, 2000), 4th Dist. No. 99CA19, 2000 Ohio App. LEXIS 371, at *7. (Emphasis added byRandall Court.) *Page 20 
 {¶ 100} In this matter, Mansfield's sexual-predator adjudication is supported by competent, credible evidence. Specifically, the trial court's findings that there were multiple victims; that the victims were young; that Mansfield's actions were part of a demonstrated pattern of abuse; and that the psychologist, Dr. Rindsberg, concluded that Mansfield posed a moderate to high risk of recidivism support the sexual-predator adjudication.
 {¶ 101} Mansfield's fifth assignment of error is without merit.
 {¶ 102} Mansfield's sixth, seventh, eighth, ninth, and tenth assignments of error are:
 {¶ 103} "[6.] The trial court erred when it sentenced the defendant-appellant to more-than-the-minimum, maximum and consecutive prison terms where the sentences imposed were not available to the court at the time the individual committed the offenses in violation of the Due Process and Ex Post Facto Clauses of the Ohio and United States Constitutions.
 {¶ 104} "[7.] The trial court erred when it sentenced the defendant-appellant to more-than-the-minimum, maximum and consecutive prison terms when no additional findings were made by the jury and when the individual had no actual or constructive notice of those possible sentences in violation of defendant-appellant's right to due process.
 {¶ 105} "[8.] The trial court erred when it sentenced the defendant-appellant to more-than-the-minimum, maximum and consecutive prison terms based on the Ohio Supreme Court's severance of the offending provisions under Foster, which was an act in violation of the principle of separation of powers. *Page 21 
 {¶ 106} "[9.] The trial court erred when it sentenced the defendant-appellant to more-than-the-minimum, maximum and consecutive prison terms contrary to the rule of lenity which dictated a lesser penalty.
 {¶ 107} "[10.] The trial court erred when it sentenced the defendant-appellant to more-than-the-minimum, maximum and consecutive prison terms contrary to the intent of the Ohio legislators who drafted sentencing provisions with the clear intent of limiting judicial discretion to impose such sentences."
 {¶ 108} In these assignments of error, Mansfield asserts his sentence is unconstitutional because he committed his crimes prior to the Supreme Court of Ohio's decision in State v. Foster, 109 Ohio St.3d 1,2006-Ohio-856, but was sentenced pursuant to the post-Foster version of R.C. 2929.14. This court has addressed Mansfield's exact arguments in the case of State v. Elswick, 11th Dist. No. 2006-L-075, 2006-Ohio-7011. In State v. Elswick, this court found the arguments that are raised in this appeal to be without merit. Id. at ¶ 5-31. See, also, State v.Marino, 11th Dist. No. 2006-L-192, 2007-Ohio-2566, at ¶ 8-14; State v.Nicholson, 11th Dist. No. 2006-L-210, 2007-Ohio-2058, at ¶ 5-11; andState v. Schaub, 11th Dist. No. 2006-L-126, 2007-Ohio-2853, at ¶ 10-17. In addition, in State v. Green, this court found a similar post-Foster Ex Post Facto Clause argument to be without merit. State v.Green, 11th Dist. Nos. 2005-A-0069 2005-A-0070, 2006-Ohio-6695, at ¶ 15-23. Finally, similar arguments have "been consistently rejected by other Ohio appellate districts and federal courts." State v.Markiewicz, 11th Dist. No. 2006-L-249, 2007-Ohio-3974, at ¶ 12, citingState v. Gibson, 10th Dist. No. 06AP-509, 2006-Ohio-6899, at ¶ 15-18;State v. Moore, 3d Dist. No. 1-06-51, 2006-Ohio-6860, at ¶ 7-12; andUnited States v. Portillo-Quezada (C.A.10, 2006), 469 F.3d 1345,1354-1356. *Page 22 
 {¶ 109} Based upon the prior authority of this and other courts, Mansfield's sixth, seventh, eighth, ninth, and tenth assignments of error are without merit.
 {¶ 110} The judgment of the trial court is affirmed.
DIANE V. GRENDELL, P.J., CYNTHIA WESTCOTT RICE, J., concur.
[1] We will refer to the minor victims as victim #1 and victim #2.
[2] R.C. 2950.09 has been repealed as of January 1, 2008. Sex-offenders are now classified according to the three-tier classification set forth in R.C. 2950.01 (E)-(G). However, since Mansfield was adjudicated a sexual predator in 2007, we will apply the provisions set forth in former R.C. 2950.09.
[3] In 2007, these factors were contained in R.C. 2950.09(B)(3)(a)-(j). *Page 1