[Cite as *State v. Woods*, 2014-Ohio-3912.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100677**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## ALLEN WOODS

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-12-568127-A

**BEFORE:** Rocco, J., Boyle, A.J., and E.A. Gallagher, J.

**RELEASED AND JOURNALIZED:** September 11, 2014

-i-

**ATTORNEY FOR APPELLANT**

Brooke Deines
Law Office of Brooke Deines L.L.C.
857 Starkweather Avenue
Cleveland, Ohio 44113

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By:   Brent C. Kirvel
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

KENNETH A. ROCCO, J.:

{¶1} Defendant-appellant Allen Woods appeals from his conviction after a jury found him guilty of importuning. He presents a single assignment of error, claiming that his conviction is against the manifest weight of the evidence.

{¶2} This court has reviewed the record with his claim in mind, but cannot find merit to his assertion. Consequently, his assignment of error is overruled, and his conviction is affirmed.

{¶3} At trial, the victim provided the following account of the incident that led to Woods's conviction.

{¶4} The victim was born on September 28, 1996. On a September morning just prior to her sixteenth birthday, she was walking to school in the Collinwood neighborhood of Cleveland when a pickup truck pulled up nearby and stopped. The driver, Allen Woods,[1] got out and approached the victim. As Woods did so, the victim noticed that a passenger remained in the truck. The passenger, who went by the initials "JR,"[2] was a good-looking young man of approximately the victim's age. The victim was intrigued by JR.

{¶5} Woods told the victim he wanted to talk to her. When she responded that he was too old for her, Woods told her that "age was nothing but a number." The victim and JR exchanged smiles and waves while Woods was speaking, so Woods took

---

[1]The record reflects Woods's date of birth is June 4, 1976.

[2]JR's actual name was Willie McQueen; he testified for the state at trial.

advantage of her interest and asked the victim if he could have her telephone number. Intending that JR have it, the victim complied.

{¶6} Woods telephoned the victim that evening. When he told her that he wanted to "meet up" with her, she explained to him that she wanted to meet his young friend. The conversation was short.

{¶7} However, Woods appeared again the following day. The victim continued walking to school as Woods called out to her to "come back." She stopped long enough to tell him that she had to go to school; she resisted his entreaties to leave with him.

{¶8} Approximately a week later, while the victim was in class, she received a telephone call from JR. He told her that he wanted to see her, and that Woods would pick her up at the nearby fast-food restaurant after school to bring her to him. She agreed. In order to disguise her intent, the victim then informed her father that she was going to remain after school to study.

{¶9} Woods met the victim as arranged. He drove her to his home in Cleveland Heights, where he offered her a drink that she refused. The victim was dismayed to notice that JR was not present; indeed, when JR came to Woods's door, Woods turned him away. Instead, Woods made sexual advances toward the victim.

{¶10} The victim resisted Woods's advances and repeated her desire to see JR. Woods ultimately relented and made a call. JR, who lived next door, returned; this time, Woods let him inside and the three of them began conversing. The victim noticed that her father was calling her during this time but she did not answer her phone.

{¶11} Eventually, the victim agreed to sit on JR's lap, whereupon, without any reaction from JR, Woods again made sexual advances toward her. The victim pushed Woods away.

{¶12} At that point, Woods proposed a "game." He told the victim that he would pretend to be a police officer and she would be a marijuana suspect. Woods directed the victim to stand against the wall while he "frisked" her. Woods touched the victim on her breasts and her "private area" as he played this game. Then both Woods and JR attempted to undress the victim but she obstructed their efforts.

{¶13} When JR proposed to the victim that they go upstairs, she accepted readily, thinking to remove herself from the situation. She first went into the bathroom hoping to find an escape route, but the window would not open. She then followed JR into "Allen's room."

{¶14} Once there, JR surprised the victim by giving her a hard push so that she fell onto the bed, whereupon JR stripped her pants from her, underwear included, and left the room with them. The victim grabbed the bedcovers to wrap around herself and followed him back downstairs.

{¶15} The victim asked JR to return her clothing. JR, however, remained out of reach while Woods attempted to "yank the cover" from the victim, then JR told her to go upstairs because "he had a condom." The victim obeyed on the hope that JR would leave her pants in a place where she could retrieve them.

{¶16} After the victim reentered the bedroom with him, JR held the victim down and attempted to have intercourse with her but could not. When he gave up, Woods came into the room and asked the victim if he could "lick [her] private area." Although she refused, he made an effort that she foiled by "kicking."

{¶17} JR finally asked her "why [was she] playing?" The victim insisted that she did not want to "have sex with both of them." Apparently now aware that she was unwilling, the men finally left her alone. She got dressed, went downstairs where she retrieved her phone, and asked Woods if he was taking her home. Woods told her he would do that if she let him "lick [her] private part." The victim walked out.

{¶18} At some distance away, the victim called 911. She informed the dispatcher that two men attempted to have sex with her and that "they came." Police officers arrived at her location soon afterward. The victim pointed out Woods's house before she was taken to the police station to make a written statement. Her mother then took her to the hospital for an examination.

{¶19} As a result of the victim's accusations, Woods was indicted in this case on five counts. He was charged with kidnapping with a sexual motivation specification, importuning, and three counts of gross sexual imposition. Woods took his case to a jury trial. After considering the evidence, the jury found Woods not guilty of four of the charges, but guilty of importuning. The trial court sentenced Woods to a year of conditional community control, and notified him that he was classified as a Tier I child sex offender.

**{¶20}** Woods appeals from his conviction with the following assignment of error.

I. Appellant's convictions are [sic] against the manifest weight of the evidence.

**{¶21}** In his assignment of error, Woods argues that the victim presented so many different versions of the incident that none of her stories was worthy of belief. He thus contends that the jury "lost its way" in considering the evidence. Upon a review of the record, this court disagrees.

**{¶22}** The Ohio Supreme Court has "carefully distinguished" the terms sufficiency and weight of the evidence in criminal cases, declaring that they are "both quantitatively and qualitatively different." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541 (1997), paragraph two of the syllabus.

**{¶23}** Unlike a review of the sufficiency of the evidence, an appellate court's function when reviewing the weight of the evidence is to determine whether the greater amount of credible evidence supports the verdict. *Volkman* at ¶ 12; *Thompkins* at 387. In reviewing whether the jury's verdict was against the weight of the evidence, the appellate court sits as a "thirteenth juror" and examines the conflicting testimony. *Id.* In doing so, this court examines the entire record, weighs the evidence and all of the reasonable inferences to be made, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the jury "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.*

**{¶24}** This court must remain mindful, however, that the weight of the evidence and the credibility of witnesses are matters primarily for the jury to assess. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). Only in exceptional cases, where the evidence "weighs heavily against the conviction," should an appellate court overturn the verdict. *Thompkins* at 388. That situation is not presented in the instant case.

**{¶25}** The jury found Woods guilty of the charge of importuning in violation of R.C. 2907.07(B). That statute provides:

(B)(1) No person shall solicit another, not the spouse of the offender, to engage in sexual conduct with the offender, when the offender is eighteen years of age or older and four or more years older than the other person, and the other person is thirteen years of age or older but less than sixteen years of age, whether or not the offender knows the age of the other person.

**{¶26}** Woods presents no challenge to the evidence that proved that at the time the incident occurred, the victim was not yet sixteen years old, and that Woods was more than four years her elder.[3] Instead, he asserts that the victim's testimony about the incident itself simply was unworthy of belief.

**{¶27}** Woods makes this assertion by focusing on the many varying details the victim provided over the course of the investigation into her allegations. In reviewing

---

[3] The victim provided her date of birth during her testimony. The detective who investigated the incident testified that Woods was born in 1976. *State v. Mansfield*, 11th Dist. Lake No. 2007-L-173, 2008-Ohio-3989; *State v. Hines*, 8th Dist. Cuyahoga No. 90871, 2009-Ohio-2118; *State v. Weir*, 2d Dist. Montgomery No. 22052, 2007-Ohio-6671. In addition, JR testified that Woods mainly associated with people in their "30s or 40s," i.e., people his own age.

the totality of the evidence, however, the record clearly demonstrates that the victim never changed her version of the portion of the incident that served as the basis for the crime of importuning. The victim testified that Woods asked her if he could perform oral sex upon her vaginal area. Because the several statements she gave to the adults who questioned her about the incident corroborated her testimony in this particular detail, the jury did not lose its way in finding Woods guilty of importuning. *State v. Kent*, 8th Dist. Cuyahoga No. 98863, 2013-Ohio-2461, ¶ 20; *State v. Anderson*, 8th Dist. Cuyahoga No. 88035, 2007-Ohio-822, ¶ 19.

{¶28} Wood's assignment of error, accordingly, is overruled.

{¶29} His conviction is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KENNETH A. ROCCO, JUDGE

MARY J. BOYLE, A.J., and

EILEEN A. GALLAGHER, J., CONCUR